**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JERYME MORGAN, # R-29175,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13-cv-182-MJR |
| ) | |
| **S.A. GODINEZ, SARAH JOHNSON,** ) | |
| **SHERRY BENTON,** ) | |
| **UNKNOWN PARTIES,** ) | |
| **C/O CHEATHAM,** ) | |
| **MAJOR WESTERMAN,** ) | |
| **P. WESTERMAN, CATHY REYNOLDS,** ) | |
| **and WARDEN ATCHISON,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Menard Correctional Center ("Menard"). Plaintiff is serving fifteen year sentences on each of two sexual assault convictions and one armed robbery conviction, as well as a seven year sentence for robbery. Plaintiff alleges that he was the victim of three separate beatings at the hands of prison staff, after which he was confined in unsanitary conditions and denied medical care for his injuries. He filed grievances over these incidents as well as the improper opening of his legal mail, and experienced threats and retaliation by staff for these complaints. Defendants Reynolds and the Jean Doe Pharmacist[1] denied him medical care and failed to fill his medications.

---

[1] Plaintiff refers to this individual in the body of the complaint as "Joan Doe Pharmacist" (Doc. 1, p. 6). For simplicity, she shall be referred to herein as "Jean Doe Pharmacist," as she is listed on the docket sheet.

More specifically, Plaintiff states that on November 12, 2011, after he had "mental health issues," three John Doe Defendants (a Sergeant and two Correctional Officers) walked him naked down the gallery, then beat him and shaved his hair against his will (Doc. 1, p. 5). They put him in a "30 minute watch cell" where the floor was flooded by a leaky sink and toilet. *Id.* He had to walk in the filthy water for several days, and had to sleep on a rusty steel bunk with no blanket.

Plaintiff was moved to another cell, which had feces on the toilet seat and walls and a filthy sink, where he spent about ten days (Doc. 1, p. 5). He still had no clothes and was refused a blanket. This cell was in view of the general population gallery, so twice a day he was subjected to stares and "unwanted sexual gesturing" by other inmates passing by. He was beaten again on November 18, 2011, while he was in handcuffs, then was "forcefully medicated by needle" and returned to the same cell. *Id.* He does not identify which Defendants perpetrated this beating or the forcible medication.

Plaintiff was beaten again (the date of this occurrence is illegible), by officers who put a bag over his head, kicked and punched him, and hit him with a flashlight (Doc. 1, p. 6). He states that a John Doe Sergeant and Defendant Cheatham beat and kicked him (Doc. 1, p. 2). According to Plaintiff's exhibits, four unknown officers perpetrated these three beatings (Doc. 1-1, pp. 6). Following this incident, Plaintiff was moved to Cell 401, which was poorly ventilated and had a bloody, moldy mattress (Doc. 1, p. 6). Plaintiff "banged and yelled" for a nurse, but Defendant Cheatham refused to summon medical help and threatened him with another beating if he did not stop. *Id.* After the shift change, he continued to ask for medical care, cleaning supplies, a new mattress, or a change of cell, but was ignored. He filed a grievance and sent requests to staff to investigate the beating.

He was moved to another cell (206) around December 1, 2011, and complained about the conditions there, which included a moldy, soggy mattress, poor ventilation, peeling paint and a rusty door.

On approximately December 8, 2011, Plaintiff was threatened and spat on by Defendant P. Westerman. On about January 22, 2012, Defendant Major Westerman[2] kicked and banged on Plaintiff's door, and threatened him. This action was triggered when Plaintiff received a "time cut" as a result of filing a grievance over a disciplinary charge for assaulting Defendant Major Westerman's family member (Doc. 1, p. 6).

On January 25, 2012, Plaintiff filed a grievance over the improper opening of his legal mail (Doc. 1, p. 6). Two days later, he was issued a "bogus disciplinary report" just 13 days before he was to be released from segregation. He filed several other grievances, including one against Defendant Nurse Reynolds for failure to provide him with his medications. Defendant Reynolds threatened him upon learning of this grievance, and blamed Defendant Jean Doe Pharmacist for the problem. After Plaintiff pursued grievances over the false disciplinary charges, two of the five charges were dropped (Doc. 1-1, pp. 3-4). He alleges that these events are "proof of a combination of constitutional violations that took place steaming [sic] out of Menard's close knitted staff retaliating against him for exercising his rights and due to his mental health challenges" (Doc. 1, p. 6).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims:

> **Count 1:** Excessive force claim against Defendant Cheatham and the John Doe Sergeant and Correctional Officer Defendants for beating, punching, and kicking Plaintiff

---

[2] Defendant P. Westerman and Defendant Major Westerman are two different individuals. Plaintiff spells their surnames as "Westernman" in the body of the complaint.

on three occasions;

**Count 2:** Deliberate indifference claim against Defendant Cheatham and John Doe Defendants for failing to respond to Plaintiff's request for medical assistance following the third assault;

**Count 3:** Unconstitutional conditions of confinement claim against the John Doe Sergeant and two John Doe Correctional Officers for placing Plaintiff in the flooded "30 minute watch" cell on November 12, 2011;

**Count 4:** Unconstitutional conditions of confinement claim against Defendant Cheatham for leaving Plaintiff in the unsanitary Cell 401 with the bloody, moldy mattress.

However, Plaintiff's remaining allegations fail to state a claim upon which relief may be granted, and shall be dismissed. As discussed below, Plaintiff shall be given leave to file an amended complaint if he wishes to further pursue certain claims.

**Claims to be Dismissed**

**Count 5:** The unsanitary conditions of Plaintiff's continued confinement in the flooded "30 minute watch cell" for several days, then in the second cell contaminated with feces, and in Cell 206 with a moldy, soggy mattress, indicate possible violations of Plaintiff's Eighth Amendment rights. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). However, in order to state a claim, Plaintiff must identify the prison officials who were personally involved in placing or leaving Plaintiff in the unsanitary cells, with knowledge of the conditions that posed a risk to Plaintiff's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff has described the bad conditions but has failed to indicate which of the Defendants was informed of those conditions yet allowed Plaintiff to be housed in those cells. Therefore, Count 5 shall be dismissed without prejudice, and with leave to amend.

**Count 6:** The actions on November 12, 2011, of the John Doe Defendants walking Plaintiff naked through the prison gallery, shaving his hair, and placing him in a cell without clothing, do not state a constitutional claim as pled. To be sure, Plaintiff was subjected

to a certain amount of humiliation as a result of having his body exposed. However, prisoners do not have an expectation of privacy in their cells, either to be free from searches or from observation by prison staff. *See Hudson v. Palmer*, 468 U.S. 517, 525-30 (1984); *see also Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) ("[P]rivacy is the thing most surely extinguished by a judgment committing someone to prison"). The Seventh Circuit has held that female guards can monitor male inmates who are in the shower or on the toilet. "[M]onitoring of naked prisoners is not only permissible … but also sometimes mandatory. Inter-prisoner violence is endemic, so constant vigilance without regard to the state of the prisoners' dress is essential. Vigilance over showers, vigilance over cells—vigilance everywhere, which means that guards gaze upon naked inmates." *Johnson*, 69 F.3d at 146.

Plaintiff states that he was held in the "30 minute watch cell" without clothing after having "mental health issues," which indicates he may have been under a suicide watch. In such a situation, it is common practice for sheets, blankets, and clothing to be removed from a cell. Plaintiff's allegations do not indicate that the deprivation of clothing or the shaving of his hair was done with deliberate indifference to his health or safety, nor does he claim that he suffered any harm other than to his dignity. Although he was periodically exposed to the view of other inmates, Plaintiff does not allege that his placement for ten days in the cell without clothing was done either to harass him or with the intent to humiliate him or cause him psychological pain. *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). Nor does he identify the prison officials responsible for holding him in the cells without clothing or a blanket. Count 6 shall also be dismissed without prejudice, and with leave to amend.

**Count 7:** Plaintiff makes a sweeping claim of retaliation. However, the only incident that may indicate unconstitutional retaliation is the claim that he was issued a "bogus

disciplinary report" two days after he filed the January 25, 2012, grievance over his improperly opened legal mail.  Plaintiff never identifies the individual(s) who issued the allegedly false disciplinary report.  Therefore, this claim cannot proceed until a Defendant is identified in an amended complaint.  Count 7 shall be dismissed without prejudice, and with leave to amend.  Plaintiff is further advised that if he tenders an amended complaint including this claim, it may be subject to being severed into a separate action, for which Plaintiff will be assessed a separate $350.00 filing fee.  *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

**Count 8:**  Plaintiff's allegations that Defendant Reynolds and Defendant Jean Doe Pharmacist denied him medical care by failing to provide him with his medications are simply too sketchy and conclusory to state a viable constitutional claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements").  Plaintiff does not indicate what physical or mental conditions he had that required medications, and nothing in the complaint suggests that the omission was anything more than simple negligence.  Only deliberate indifference to a serious medical condition will violate an inmate's constitutional rights.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Furthermore, Defendant Reynolds' "threats" to Plaintiff upon learning of his grievance against her fails to state a claim.  *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"). Accordingly, Count 8 and Defendants Reynolds and Jean Doe Pharmacist shall be dismissed without prejudice, and with leave to amend.  As with Count 7, if Plaintiff chooses to re-plead this

claim, it may be subject to severance into a separate case where Plaintiff will incur another filing fee.

**Count 9:** Plaintiff's claim that he was "forcefully medicated by needle" on November 18, 2011, is also too vague to amount to an actionable constitutional claim. Not only does Plaintiff fail to indicate which Defendant injected him, he also gives no information about what type of medication may have been administered to him or what effect the injection had on him. A prisoner has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). However, the "Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. *See also Fuller v. Dillon*, 236 F.3d 876, 881-82 (7th Cir. 2001); *Sullivan v. Flannigan*, 8 F.3d 591 (7th Cir. 1993). The complaint is not clear on whether Plaintiff was injected with an antipsychotic drug or some other medication, nor does it indicate who made the decision to medicate him. This claim shall also be dismissed without prejudice, and with leave to amend.

**Count 10:** Plaintiff's allegations that Defendant P. Westerman spit on him and threatened him, and that Defendant Major Westerman kicked and banged on his cell door while threatening Plaintiff, fail to state any constitutional claim. As noted in Count 8, verbal harassment and threats do not violate the constitution. *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). The spitting certainly constitutes offensive contact, but does not rise to the level of force that is needed to sustain a constitutional claim. *Wilkins v. Gaddy*, 559 U.S. 34, ---, 130 S. Ct. 1175, 1178 (2010) (the question is whether the force used was *de minimis*, and not "every malevolent touch by a prison guard gives rise to a federal cause of action"); *Hudson v.*

*McMillian*, 503 U.S. 1, 9-10 (1992) (the *de minimis* use of physical force does not violate the Constitution, provided that the use of force is not of a sort "repugnant to the conscience of mankind").

Similarly, the disturbance caused by banging and kicking on Plaintiff's cell door is not a constitutional violation. Furthermore, even though Plaintiff implies that Defendant Major Westerman's banging and kicking the door, and threats were done in retaliation for Plaintiff's successful grievance (Doc. 1, p. 6), these activities do not constitute "adverse actions" that would be likely to deter First Amendment activity in the future. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Thus, they do not amount to a claim for unconstitutional retaliation. Count 10 shall be dismissed with prejudice.

Finally, Defendants Godinez (IDOC Director) and Atchison (Menard Warden) shall be dismissed on initial review because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiff has not alleged that either Defendant Godinez or Defendant Atchison was "personally responsible for the deprivation of a constitutional right." *Id.* Indeed, he has failed to mention either of these Defendants, or Defendants Johnson and Benton, anywhere in the body of his complaint in connection with his myriad allegations. Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Accordingly, Defendants Godinez, Johnson, Benton, and

Atchison shall be dismissed from this action.

**Pending Motion**

Plaintiff's motion for appointment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Williams for further consideration.

**Disposition**

**COUNTS 5-9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 10** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **MAJOR WESTERMAN, P. WESTERMAN, REYNOLDS, JEAN DOE PHARMACIST,** and **ATCHISON** are **DISMISSED** from this action without prejudice. Defendants **GODINEZ, JOHNSON,** and **BENTON** are dismissed with prejudice.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed on any of the dismissed claims in **COUNTS 5, 6, 7, 8, or 9,** Plaintiff shall file his First Amended Complaint, within 35 days of the entry of this order (**on or before April 23, 2013**). The First Amended Complaint must include factual allegations supporting each claim, must identify the individual Defendant(s) directly responsible for the alleged unconstitutional actions in each claim, and must identify each claim by number as designated herein.

Plaintiff is **ADVISED** that the First Amended Complaint must also contain the allegations that form the basis for **Counts 1, 2, 3, and 4**, which have survived review under 28 U.S.C. § 1915A and shall receive further consideration. An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must

stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Failure to timely file an amended complaint shall result in the dismissal of the claims in **Counts 5, 6, 7, 8, and 9** becoming a dismissal **with prejudice**. The amended complaint shall be subject to review pursuant to § 1915A.

As to **COUNTS 1, 2, and 4**, the Clerk of Court shall prepare for Defendant **CHEATHAM**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants in **COUNTS 1, 2, 3, and 4** until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into

a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 19, 2013**

s/ MICHAEL J. REAGAN
United States District Judge